IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:26-00121 |
| | ) | |
| | ) | |
| | ) | 18 U.S.C. § 2 |
| RAMON AQUINO | ) | 18 U.S.C. § 1347 |

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

At all times material to this Information:

1.      The defendant, **RAMON AQUINO**, was a physician licensed by the State of Tennessee Department of Health, Board of Examiners under license number 15005 on August 16, 1983, and was licensed to practice medicine in the State of Tennessee.

2.      The Controlled Substances Act, Title 21, United States Code, Sections 801, *et seq.*, regulated the manufacture, distribution, dispensation and use of drugs. Drugs, referred to in the Act as "controlled substances," were listed in schedules based upon the drug's medical use, potential for abuse, safety, and risk of dependence.

A.      Controlled substances in Schedule II were drugs which have a currently accepted medical use, or a use with severe restrictions, but also had a high potential for abuse, and abuse of the drug could lead to severe psychological or physical dependence.

B.      Controlled substances in Schedule III were drugs which had a currently accepted medical use and had less potential for abuse than the drugs or other substances in schedules I and II, but abuse of the drug could lead to moderate or low physical dependence or high psychological dependence.

C. Controlled substances in Schedule IV were drugs which had a currently accepted medical use and had a lower potential for abuse relative to controlled substances in Schedule III, but abuse could lead to limited physical dependence or psychological dependence.

D. Controlled substances in Schedule V were drugs which had a currently accepted medical use and had a lower potential for abuse relative to controlled substances in Schedule IV, but abuse could lead to limited physical dependence or psychological dependence.

3. As part of his practice, **RAMON AQUINO** prescribed controlled substances, including opioids and benzodiazepines, with his Drug Enforcement Administration ("DEA") registration under DEA Number BA2233928.

4. **RAMON AQUINO** operated a medical clinic known as North Clarksville Medical Center at 351 Dover Road, Clarksville, Tennessee.

5. **RAMON AQUINO** accepted cash-paying patients, and insurance patients, including private insurance and public insurance, such as Medicare and Medicaid.

<u>Background on Medicare and TennCare</u>

6. The United States Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS"), was an agency of the United States that administered the Medicare and Medicaid programs. Medicare was a federally funded health insurance program that provided insurance coverage for persons aged 65 or over and to persons under the age of 65 who are entitled to benefits due to disability. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

7. Typically, a Medicare beneficiary enrolled in a Medicare Part D plan would fill their prescription at a pharmacy utilizing their Medicare Part D plan coverage to pay for the prescription. The pharmacy would then submit the prescription claim for reimbursement to the Medicare Part D beneficiary's plan for payment under the beneficiary's Health Insurance Claim Number and/or Medicare Plan identification number.

8. Medicare required of its providers, among other things, that all drugs prescribed or issued be medically necessary, that is, "reasonable and necessary" for the diagnosis and treatment of an illness or injury. Medicare claim forms, for example, required the provider who made a claim for services to certify that the services were "medically indicated and necessary for the health of the patient."

9. For a drug to have been covered and reimbursable under the Medicare program, the drug must have been prescribed by a physician who was treating the Medicare enrollee within the scope of the physician's license, and must be required in order to diagnose or treat the patient's medical condition, and must be safe and effective.

10. TennCare was Tennessee's Medicaid program and was administered pursuant to Title XIX of the Social Security Act. TennCare was also a health care benefit program, as defined by Title 18, United States Code, Section 24(b).

11. TennCare was a joint program between the State of Tennessee and the United States of America, with approximately 30 percent of the funding coming from the State of Tennessee and the remaining approximate 70 percent coming from the United States federal government. TennCare served indigent people who could not afford health care insurance and uninsured or uninsurable people.

12. For TennCare pharmacy claims, the state assumed the financial responsibility of drugs. Through TennCare, the state contracted with a "Pharmacy Benefits Manager" ("PBM"), which actually paid the pharmacies. TennCare's PBM was called Optum Rx. For each drug, the PBM processed and reimbursed pharmacy providers for all claims from TennCare enrollees. TennCare, through the PBM, paid funds directly to retail pharmacies that in turn dispensed prescription medications to the TennCare recipient. The TennCare prescription program operated on a claim-for-service basis.

13. TennCare required of its providers, among other things, that all drugs prescribed or issued must have been "medically necessary," that is, prescribed by a physician who was treating the Medicare enrollee within the scope of the physician's license, and must be required in order to diagnose or treat the patient's medical condition, and must be safe and effective.

<u>The Scheme</u>

14. Prescriptions for controlled substances issued by **RAMON AQUINO** to patients were presented by patients to pharmacies, and pharmacies submitted claims for payment for the controlled substances to Medicare Part D health plans, or to TennCare through Optum Rx, for reimbursement and payment.

15. From at least January 2018, and continuing thereafter until at least October 2023, in the Middle District of Tennessee, the defendant, **RAMON AQUINO**, aided and abetted by others known and unknown to the United States Attorney, knowingly and willfully devised and participated in a scheme and artifice to defraud health insurance benefit programs, including Medicare and TennCare, in connection with the delivery of and payment for health care benefits, items, and services.

4

16. It was the general purpose of the scheme and artifice for **RAMON AQUINO** to cause others known and unknown to the United States Attorney to submit materially false and fraudulent claims to Medicare and TennCare, including for payment for dispensed controlled substance prescriptions that were not medically necessary on behalf of Medicare and TennCare beneficiaries, knowing and intending that Medicare and TennCare would pay such false and fraudulent claims.

17. It was part of the scheme that **RAMON AQUINO** would prescribe controlled substances to patients without sufficient medical necessity for the prescription of controlled substances.

18. It was further part of the scheme that **RAMON AQUINO** would prescribe excessive and inappropriate quantities and combinations of controlled substances to patients outside the usual course of professional practice.

19. According to the Tennessee Controlled Substance Monitoring Database, over a seven-year period from July 2017 to July 2024, **RAMON AQUINO** prescribed a total of approximately 43,103 prescriptions for controlled substances, which included approximately 525,519 pills/doses of narcotics (oxycodone and hydrocodone) and 569,455 pills/doses of benzodiazepines (alprazolam, diazepam, and clonazepam).

20. It was further part of the scheme that **RAMON AQUINO** would prescribe controlled substances in quantities and combinations that would cause patients to abuse, misuse, and become addicted to the controlled substances, including prescribing the dangerous "trinity" combination of opioids, benzodiazepines, and muscle relaxers.

21. It was further part of the scheme that **RAMON AQUINO** would prescribe combinations of controlled substances to patients but failed to monitor the use and abuse of the prescribed controlled substances of the patients.

22. It was further part of the scheme that **RAMON AQUINO** would continue to prescribe addictive controlled substances notwithstanding the receipt of information by **RAMON AQUINO** that patients were illegally distributing their prescribed medications.

23. It was further part of the scheme that **RAMON AQUINO** would fail to permanently discharge patients after certain patients had inconsistent drug screens for illegal substances and non-prescribed controlled substances.

24. It was further part of the scheme that **RAMON AQUINO** ignored warnings about prescribing combinations of controlled substances.

25. It was further part of the scheme that **RAMON AQUINO**, and others known and unknown to the United States Attorney, would bill Medicare and TennCare for the patient visits to his clinic where they obtained controlled substance prescriptions.

26. It was further part of the scheme that **RAMON AQUINO** would write prescriptions that caused pharmacists to submit claims to TennCare and Medicare for payment and reimbursement of controlled substance prescriptions written by **RAMON AQUINO**.

27. Between January 2018 and October 2023, **RAMON AQUINO** submitted, or caused to be submitted, false claims in the amount of approximately $889,874.22 for controlled substance prescriptions, which resulted in approximately $335,621.73 in claims paid for such prescriptions.

28. On or about May 19, 2023, in the Middle District of Tennessee and elsewhere, **RAMON AQUINO**, in connection with the delivery of and payment for health care benefits,

6

items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is TennCare and Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises money and property owned by, and under the custody and control of, said health care benefit programs, **RAMON AQUINO**, did cause a pharmacy to submit claims for reimbursement for dispensed medications based on prescriptions to patients J.S. and D.S. for controlled substances oxycodone and alprazolam, which were issued by **RAMON AQUINO**, that were false and fraudulent in that the prescriptions were not valid, reasonable and necessary, and were otherwise not eligible for reimbursement, including because the prescriptions were not issued for a legitimate medical purpose in the usual course of professional practice.

All in violation of Title 18, United States Code, Sections 1347 and 2.

<u>FORFEITURE ALLEGATION</u>

29.     The allegations contained in the Information are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture allegation.

30.     Upon conviction of the charge in the Information, the defendant, **RAMON AQUINO** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7):

> A.     Any property, real or personal, that constitutes, or is derived directly or indirectly, from gross proceeds traceable to the commission of the offense, including but not limited to the following:
>
> 1) a money judgment in an amount to be determined representing the amount of proceeds **RAMON AQUINO** obtained as a result of such offense.

7

31.     If any of the property described above, as a result of any act or omission of the defendant, **RAMON AQUINO**:

> A.     cannot be located upon the exercise of due diligence;
>
> B.     has been transferred or sold to, or deposited with, a third party;
>
> C.     has been placed beyond the jurisdiction of the court;
>
> D.     has been substantially diminished in value; or
>
> E.     has been comingled with other property that cannot be divided without difficulty;

the United States shall be entitled to forfeiture of the substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of **RAMON AQUINO** up to the value of said property listed above as being subject to forfeiture.

BRADEN H. BOUCEK
UNITED STATES ATTORNEY

CHRIS SUEDEKUM
ASSISTANT UNITED STATES ATTORNEY

8