IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:26-cr-00121 |
| v. | ) | |
| | ) | Judge Trauger |
| RAMON AQUINO | ) | |

## PLEA AGREEMENT

The United States of America, by and through Braden H. Boucek, United States Attorney

for the Middle District of Tennessee, and Assistant United States Attorney Chris Suedekum, and

the defendant, Ramon Aquino, by and through the defendant's counsel, Meggan Sullivan, pursuant

to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, have entered into an agreement,

the terms and conditions of which are as follows:

### Charges and Penalties in This Case

1.      The defendant has been charged in the Information in this case with health care

fraud, in violation of Title 18, United States Code, Section 1347, which carries the following

maximum penalties: up to 10 years' imprisonment; a $250,000 fine; and supervised release of up

to 3 years.

2.      As a result of the defendant's offense, the defendant is subject to forfeiture of

property as alleged in the Information.

3.      The defendant must pay upon conviction a $100 special assessment, pursuant to

Title 18, United States Code, Section 3013.

4.      As part of any sentence, in addition to any term of imprisonment and/or fine that is

imposed, the Court may order the defendant to pay restitution to any victim of the offense, as

required by law.

1

5.     The defendant has read the charge against the defendant contained in the Information. That charge has been fully explained to the defendant by the defendant's attorney. The defendant fully understands the nature and elements of the crime with which the defendant has been charged.

Charge to Which the Defendant is Pleading Guilty

6.     By this Plea Agreement, the defendant agrees to enter a voluntary plea of guilty to the Information. In addition, as further provided below, the defendant agrees to entry of a forfeiture judgment.

Factual Basis

7.     The defendant will plead guilty because the defendant is in fact guilty of the charge contained in the Information. In pleading guilty, the defendant admits the following facts and that those facts establish the defendant's guilt beyond a reasonable doubt:

> The defendant, Ramon Aquino, M.D. ("Aquino"), was a medical doctor licensed by the State of Tennessee Department of Health, Board of Examiners under license number 15005 on August 16, 1983. Aquino was registered with the Drug Enforcement Administration to prescribe controlled substances under registration number(s) BA2233928.

> Aquino owned and operated North Clarksville Medical Center ("NCMC"), a medical practice located in Clarksville, Tennessee. From no later than January 2018 and through a course of continuing conduct until at least October 2023, in the Middle District of Tennessee, Aquino knowingly and willfully executed a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid (TennCare). The defendant obtained, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services. Medicare and TennCare are a health care benefit programs affecting commerce and are administered by the U.S. Department of Health and Human Services, through its federal agency Centers for Medicare and Medicaid Services ("CMS").

> Medicare and TennCare pay for certain prescriptions drugs, including controlled substances, for beneficiaries or recipients. Medicare and TennCare require of their

2

Providers, among other things, that all drugs prescribed or issued be medically necessary, comply with federal law, and be for a legitimate medical purpose and in the usual course of professional practice.

Aquino was an enrolled provider with Medicare and TennCare. As an enrolled provider, Aquino repeatedly signed certifications, swearing that he would abide by the rules of the Medicare and TennCare programs and that he would not submit false, fictitious, or fraudulent claims. Aquino knew Medicare and TennCare would not reimburse for medically unnecessary services or for claims that were not actually provided as represented on claims for payment. Aquino also knew that Medicare and TennCare relied on the honesty of its enrolled providers to accurately represent services on claims submitted for payment.

As part of his medical practice, Aquino prescribed controlled substances to patients, including prescriptions for the dangerous "trinity" combination of opioids, benzodiazepines, and muscle relaxers. Aquino routinely prescribed large quantities of opioid medications, many times in combination with benzodiazepines, to patients without a legitimate medical purpose and without performing diagnostic tests and/or appropriate medical consultations to substantiate the need for such medications. Aquino continued to prescribe controlled substances to patients even when patients had either failed multiple urine drug screens ("UDS"), or were alleged to be selling their prescriptions. And, despite receiving multiple warnings from the Department of Health, insurers, and pharmacists regarding his prescribing habits, Aquino continued to prescribe controlled substances and opioids.

The defendant, through NCMC, submitted and caused the submission of false and fraudulent claims to Medicare and Medicaid for controlled substance prescriptions. The claims were false because the controlled substance prescriptions he authorized (1) were medically unnecessary, and (2) were not supported by required elements of medical evaluation or service. The defendant knew that the prescriptions he authorized were outside the usual course of professional practice and without a legitimate medical purpose.

For example, between January 2018 and April 2024, Aquino authorized a total of 185 prescriptions for Patient A for controlled substances, totaling approximately 18,636 pills/doses. In the summer of 2021, Aquino was notified by law enforcement that Patient A was selling her monthly Percocet (Oxycodone) and Xanax prescriptions, which were prescribed to her by Aquino. Despite this, Aquino continued to see Patient A through June of 2024 and continued prescribing controlled substances to Patient A, including Oxycodone and Alprazolam (Xanax).

As another example, between May 2015 and May 2024, Aquino prescribed Patient B and Patient C, a married couple with the same surname and same address, the exact same number of pills/doses of controlled substances. Patient B and Patient C were each prescribed 9,360 pills of Oxycodone, 4,860 pills of Xanax, and 4,860 pills of Soma (a muscle relaxer) during this time frame. Aquino continued to

3

prescribe the controlled substances despite being notified in April 2023 that Patient B and Patient C were selling the pills they received from their prescriptions.

For the purpose of restitution and determining the applicable advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), Aquino agrees to the following, to which the defendant stipulates, constitutes relevant conduct: between January 2018 and October 2023, Aquino admits that he (directly and through his clinic) submitted, or caused to be submitted, false claims in the amount of approximately $889,874.22 for controlled substance prescriptions, which resulted in approximately $335,621.73 in claims paid for such prescriptions. As defendant knew, these claims should not have been reimbursed because the claims were false, fictitious, and fraudulent in that they were not medically necessary, were outside the usual course of professional practice, and were without a legitimate medical purpose.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for the defendant's plea of guilty and criminal forfeiture. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's and/or others' involvement in the offense conduct and other matters.

<u>Acknowledgement and Waivers Regarding Plea of Guilty: Trial Rights</u>

8.     The defendant understands that by pleading guilty the defendant waives and surrenders certain trial rights, including the following:

a.     If the defendant persisted in a plea of not guilty to the charges, the defendant would have the right to a public and speedy trial. The defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if the defendant, the government, and the Court all agreed to have no jury.

b.     If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and the defendant's attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. At trial, the jury would be

4

instructed that the defendant is presumed innocent; that the government bears the burden of proving the defendant guilty of the charges beyond a reasonable doubt; and that the jury must consider each count of the Indictment against the defendant separately.

c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses, and the defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on the defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e. At a trial, the defendant would have the right not to testify, and no inference of guilt could be drawn from the defendant's refusal to testify.

9. The defendant understands that, by pleading guilty, the defendant is waiving all of the trial rights set forth in the prior paragraph. The defendant's attorney has explained those rights, and the consequences of the defendant's waiver of those rights, to the defendant.

<u>Sentencing Guidelines Calculations</u>

10. The parties understand that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), in determining the defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

5

11. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant agree to recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

a. Offense Level Calculations.

    i. The base offense level for the count of conviction is 6, pursuant to U.S.S.G. § 2B1.1(a).

    ii. The parties agree that the base offense level is increased by 14 levels because the amount of loss under U.S.S.G. § 2B1.1(b)(1)(I) is greater than $550,000, but less than $1,500,000.

    iii. The parties agree that the offense level should be increased by 2 levels pursuant to U.S.S.G. § 3B1.3 because defendant abused a position of trust.

    iv. The parties agree that, if the defendant qualifies under U.S.S.G. § 4C1.1, the offense level will be reduced by 2 levels.

    v. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). If the defendant qualifies for a decrease under U.S.S.G. § 3E1.1(a), has an offense level of 16 or more prior to the operation of U.S.S.G. § 3E1.1(a), and has given timely notification of the defendant's intention to enter a plea of guilty, the United States will move for an additional one-level decrease in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1(b).

vi. The parties agree that no additional upward or downward adjustments are appropriate.

vii. The defendant acknowledges that if the Court does not accept the U.S.S.G. recommendations of the parties, the defendant will have no right to withdraw the defendant's guilty plea.

viii. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments or calculations different from those recommended or agreed upon above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

12. Therefore, assuming that the defendant clearly demonstrates acceptance of responsibility to the satisfaction of the government, the parties anticipate recommending to the Court, pursuant to Rule 11(c)(1)(B) that the defendant's final offense level is 17 (the "Recommended Offense Level").

13. The defendant understands that the offense level as ultimately determined by the Court (the "Court-determined Offense Level") may be different than the Recommended Offense Level. The defendant likewise understands that the advisory guidelines range as ultimately determined by the Court (the "Court-determined guidelines range") will be based on the Court-determined Offense Level and the Court's determination of the defendant's Criminal History Category.

14. The defendant is aware that any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. The defendant understands that the Probation Office will conduct its own investigation and

7

make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculation, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office. The defendant further acknowledges that, to the extent the parties have recommended guidelines calculations in this plea agreement, the defendant will have no right to withdraw from the plea agreement if the Court does not accept these recommended guidelines calculations.

Agreements Relating to Sentencing

15.    Sentencing Recommendation. This Plea Agreement is governed in part by Federal Rule of Criminal Procedure 11(c)(1)(B), in that the United States agrees to recommend that any sentence of incarceration may be satisfied through home confinement. Defendant is free to recommend whatever sentence defendant deems appropriate. The defendant understands that the defendant's request is not binding on the Court and, after considering the defendant's Sentencing Guidelines, the Court may impose the maximum penalties set forth above. The defendant understands further that the defendant will not be permitted to withdraw the defendant's guilty plea if the Court does not adopt the defendant's request. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and accept the plea agreement and enter an order reflecting the acceptance of both the plea and this plea agreement.

Restitution and Fines

16.    Restitution. Pursuant to Title 18, United States Code, Section 3663A, the Court must order the defendant to make restitution in an amount determined by the Court, minus any

8

credit for funds repaid prior to sentencing. The parties agree that the amount of restitution owed to Medicare is $193,717.64 and the amount owed to Medicaid is $141,904.09.

17.     Pursuant to 18 U.S.C. § 3572, all monetary penalties, including restitution imposed by the Court, shall be due and payable immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the defendant is unable to pay immediately, then the defendant agrees to the imposition of a schedule of payments established at sentencing. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce a judgment.

18.     The defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which the defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

<u>Forfeiture in the Form of Money Judgment</u>

19.     The defendant acknowledges that the Government alleges the defendant obtained at least $335,621.73 in proceeds from the offense of conviction, and that as a result of the defendant's acts or omissions, the actual and/or entire proceeds of the offenses are not available for forfeiture. The defendant consents to entry of a forfeiture money judgment in the amount of $335,621.73.

20.     As provided in Title 21, United States Code, Section 853(p), the defendant acknowledges that the United States is entitled to forfeiture of substitute property up to the $335,621.73 money judgment entered pursuant to this agreement.

9

21.     The defendant waives any defect in or failure of notice in the charging instrument, inclusion in the judgment, and any other procedural requirements of Fed. R. Crim P. 32.2.

22.     The defendant will cooperate with the United States in all forfeiture-related matters. This cooperation will include, but not be limited to: (a) truthful testimony; (b) consent to discovery concerning property involved in the offense and the defendant's assets; (c) execution of documents required to effect this agreement, including transfers of substitute assets; (d) the production or release of tax information, returns, or other financial documents concerning the defendant; and (e) repatriation of any proceeds of the offense held outside the United States.

23.     Unless otherwise specifically agreed, the defendant relinquishes all claims or disputes in any administrative or civil forfeiture proceeding arising from the facts and circumstances at issue in the criminal case.

24.     The U.S. Probation and Pretrial Services Office may release the Presentence Investigative Report to the Asset Forfeiture Unit of the United States Attorney's Office.

25.     Forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose. The United States will seek approval from the Money Laundering, Narcotics, and Forfeiture Section of the U.S. Department of Justice ("MNF") via the processes outlined at 28 C.F.R. § 9 and Title 18, United States Code, Section 3664, for any forfeiture payment to be credited toward any restitution obligation imposed in this matter. However, the ultimate discretion to grant or deny such requests lies with MNF.

### Presentence Investigation Report/Post-Sentence Supervision

26.     The defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Presentence Investigation Report and at

10

sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charges against the defendant, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

27. The defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of the defendant's financial circumstances, including the defendant's recent income tax returns as specified by the Probation Office. The defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of the defendant's sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

## Waiver of Appellate Rights

28. Regarding the issue of guilt, the defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether the defendant is guilty of the crime(s) to which the defendant is agreeing to plead guilty; and (ii) trial rights that might have been available if the defendant had exercised the right to go to trial. Regarding sentencing, the defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within or below the Court-determined guidelines range. The defendant further waives all appellate rights and collateral attacks concerning forfeiture and all matters related thereto. The defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C.

11

§ 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence within or above the Court-determined guidelines range.

## Other Terms

29. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against the defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, including Immigration and Customs Enforcement, except as expressly set forth in this Plea Agreement.

30. Should the defendant engage in additional criminal activity after the defendant has pled guilty but prior to sentencing, the defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

## Conclusion

31. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and the defendant regarding the defendant's criminal liability in Case No. 3:26-cr-00121.

32. The defendant and the defendant's attorney acknowledge that no threats have been made to cause the defendant to plead guilty.

33. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

34. The defendant understands that the Information and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person. If the defendant moves to file this Plea Agreement under seal, the defendant consents to the disclosure of the Plea Agreement as required by the United States' discovery obligations.

35. The defendant understands that the defendant's compliance with each part of this Plea Agreement extends until such time as the defendant is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. The defendant further understands that in the event the defendant violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Plea Agreement, or may require the defendant's specific performance of this Plea Agreement. The defendant understands and agrees that in the event that the Court permits the defendant to withdraw from this Plea Agreement, or the defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

13

36.     The Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Information. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 7/6/26

RAMON AQUINO
The Defendant

37.     Defense Counsel Signature: I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending Information. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to the defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 7/6/26

Meggan Sullivan
Attorney for the Defendant

Respectfully submitted,

BRADEN H. BOUCEK
United States Attorney

By:     /s/ Chris Suedekum
        Chris Suedekum
        Deputy Criminal Chief

        /s/ Ahmed Safeeullah
        Ahmed Safeeullah
        Criminal Chief

14